UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE GUARANTEE COMPANY OF
NORTH AMERICA USA, a Foreign
Corporation,

        Plaintiff,        Case No.:

v.

FLORIDA SAFETY CONTRACTORS, INC., a Florida Corporation, FSC VENTURES, LLC, a Florida Limited Liability Company, SHAFTCO, INC., a Florida Corporation, MICHAEL K. REICHART, individually, ELAINE REICHART, individually, PREM PERSAUD, individually, and VICTORIA PERSAUD, individually,

        Defendants.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, THE GUARANTEE COMPANY OF NORTH AMERICA USA ("The Guarantee"), through its counsel, sues Defendants, FLORIDA SAFETY CONTRACTORS, INC. ("Florida Safety"), FSC VENTURES, LLC ("FSC"), SHAFTCO, INC. ("Shaftco"), MICHAEL K. REICHART, ELAINE REICHART, PREM PERSAUD, and VICTORIA PERSAUD. (The Guarantee refers to all of the Defendants collectively as the "Indemnitors".)

## PARTIES, JURISDICTION, AND VENUE

1.      This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332(a) because Plaintiff and Defendants are citizens of diverse states.

2.      The Guarantee is a Michigan corporation incorporated in Michigan. Its principal place of business is in Southfield, Oakfield County. Thus, in accordance with 28 U.S.C. § 1332(c)(1), The Guarantee is a citizen of Michigan.  The Guarantee is licensed to conduct business in Florida.

3.      Upon information and belief, Florida Safety is a corporation incorporated in Florida. Its principal place of business is in Thonotosassa, Florida, in Hillsborough County. Thus, in accordance with 28 U.S.C. § 1332(c)(1), Florida Safety is a citizen of Florida.

4.      Upon information and belief, FSC is a limited liability company in Florida with is principal place of business in Thonotosassa, Florida, in Hillsborough County. Its members are Michael K. Reichart and Prem Persaud.  On information and belief Michael K. Reichart is domiciled in Tampa, Florida, in Hillsborough County.  On information and belief, Prem Persaud is domiciled in Treasure Island, Florida, in Pinellas County.  Thus, in accordance with 28 U.S.C. § 1332(c)(1), FSC is a citizen of Florida.

5.      Upon information and belief, Shaftco is a corporation incorporated in Florida with is principal place of business in Thonotosassa, Florida, in Hillsborough County. Thus, in accordance with 28 U.S.C. § 1332(c)(1), Shaftco is a citizen of Florida.

6.      Upon information and belief, Michael K. Reichart is a resident of, and domiciled in, Tampa, Florida, in Hillsborough County, making him a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

7. Upon information and belief, Elaine Reichart is a resident of, and domiciled in, Tampa, Florida, in Hillsborough County, making her a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

8. Upon information and belief, Prem Persaud is a resident of, and domiciled in, Treasure Island, Florida, in Pinellas County, making him a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

9. Upon information and belief, Victoria Persaud is a resident of, and domiciled in, Treasure Island, Florida, in Pinellas County, making her a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

10. The causes of action alleged herein fall within the jurisdictional limits of the Court because The Guarantee seeks to recover more than $75,000.00 from the Defendants.

11. Venue is appropriate in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Middle District of Florida, and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Tampa Division of this Court.

**GENERAL ALLEGATIONS**

12. As part of its business, The Guarantee issues payment and performance bonds and stands as surety for selected contractors.

13. In connection with their work, the Indemnitors from time to time required surety payment and performance bonds.

14. To induce The Guarantee to issue payment and performance bonds on their behalf, the Indemnitors entered into indemnity agreements with The Guarantee.

15. Specifically, on July 16, 2008, the Indemnitors, with the exception of Shaftco, each executed a General Agreement of Indemnity ("First Agreement") in favor of The Guarantee, its affiliates, and its agents. A copy of the First Agreement is attached and incorporated into this Complaint as **Exhibit "A."**

16. Additionally, on July 24, 2008, the Indemnitors each executed a General Agreement of Indemnity ("Second Agreement") in favor of The Guarantee, its affiliates, and its agents. A copy of the Second Agreement is attached and incorporated into this Complaint as **Exhibit "B."**

17. The First Agreement and Second Agreement are substantively identical and are collectively referred to in this Complaint as the "Agreements."

18. The execution of the Agreements, and the Indemnitors' undertaking of the various responsibilities and obligations contained in the Agreements, were absolute conditions precedent and prerequisites to The Guarantee issuing any bonds naming one or more of the Indemnitors as a principal.

19. According to the Agreements, the Indemnitors agreed, in part, to:

> [I]ndemnify SURETY and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which SURETY may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by prosecuting or defending any action

in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement. In the event SURETY advances funds for the benefit of any CONTRACTOR in connection with work subject to a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT) and/or for the discharge of obligations incurred in connection with a BONDED CONTRACT, such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the CONTRACTOR.

[Exhibits A and B, § 4].

20. The Agreements also provide that:

SURETY may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED. Vouchers or other evidence of payments made by SURETY shall be prima facie evidence of the fact and amount of the liability of the UNDERSIGNED to SURETY.

[Exhibits A and B, § 7].

21. The Agreements are unequivocal and specific in setting forth the Indemnitors' obligations to indemnify and keep The Guarantee indemnified "from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which SURETY may sustain, incur or become liable for" as a result of executing the payment and performance bonds or because of the Indemnitors' failure to comply with the Agreements.

22. The Guarantee agreed to issue payment and performance bonds naming one or more of the Indemnitors as principal at the Indemnitors' request in consideration for their promise to comply with the terms of the Agreements.

23. The Guarantee issued payment and performance bonds (the "Bonds") naming Florida Safety as principal on various construction projects (the "Projects").

24. The Guarantee received actual and threatened payment and performance bond claims against the Bonds ("Bond Claims") from various entities ("Bond Claimants") due to Florida Safety's failure or refusal to fulfill its performance or payment obligations.

25. The Guarantee has incurred losses as a result of issuing the Bonds, which losses include, among other things, the resolution of Bond Claims, the costs to facilitate the completion of work Florida Safety was unwilling or unable to complete, and the costs and fees of consultants and attorneys to investigate and resolve the Bond Claims.

26. Despite demand, the Indemnitors have not reimbursed The Guarantee for the Bond Claim payments, attorneys' fees, consultants' fees, and other costs and expenses The Guarantee has incurred, and continues to incur, as a result of issuing the Bonds.

27. The Guarantee has retained the undersigned attorneys to represent it in this action, and is obligated to pay these attorneys a reasonable fee for their services rendered.

28. The Guarantee has performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the Agreements or has been excused from doing so by Indemnitors.

29. All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## (Breach of Contract / Contractual Indemnity Against the Indemnitors)

30. The Guarantee realleges and incorporates the allegations in paragraphs 1 through 29 as if fully set forth herein.

31. Pursuant to the Agreements, the Indemnitors promised to "indemnify SURETY and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which SURETY may sustain, incur or become liable for" by reason of, among other things, having executed the Bonds or enforcing the Agreements.

32. The Indemnitors have committed various breaches and defaults of the Agreements including, but not limited to, failing and refusing to indemnify The Guarantee from any and all liability for losses and expenses that The Guarantee incurred, of whatsoever kind or nature, relating to the Bond Claims.

33. As a result of the Indemnitors' breaches of the Agreements, The Guarantee has, to date, suffered the following damages (collectively, the "Indemnity Damages"):

    a. $9,893,408.00 in payments for Bond Claims and

    b. $442,744.94 in attorneys' fees, consultants' fees, and other costs and expenses.

34. The Guarantee's Indemnity Damages total $10,336,152.94 as of the date of this Complaint.

35. The Guarantee's Indemnity Damages are continuing in nature because it expects to incur additional losses as a result of issuing the Bonds, which losses will include payment of additional Bond Claims and the costs to investigate and defend itself against those Bond Claims.

36. The Guarantee is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the Agreements.

WHEREFORE, The Guarantee demands judgment against the Indemnitors, jointly and severally, for the Indemnity Damages in at least the amount of $10,336,152.94 (subject to increase as a result of the unresolved Bond Claims pending as of the filing of this Complaint), costs of this action, prejudgment interest, attorneys' fees, and such further relief as this Court deems just and proper.

## COUNT II
### (Common Law Indemnity Against Florida Safety)

37. The Guarantee realleges and incorporates paragraphs 1 through 13, 23 through 27, and 29 as though fully set forth herein.

38. The Guarantee is without fault for the Bond Claims.

39. The Guarantee had a special relationship with Florida Safety by virtue of acting as its surety and issuing the Bonds.

40. The Guarantee's liability under the Bonds, if any, is merely technical, secondary, and vicarious to that of Florida Safety, who is actively and completely at fault for, and obligated to timely pay, any underlying liability on the Bonds.

41. As a direct and proximate result of Florida Safety's failure to honor its obligations, The Guarantee has incurred and continues to incur damages, losses and expenses, including consultants' and attorneys' fees and costs, by reason of having executed the Bonds.

42. Florida Safety is liable to The Guarantee for all losses, expenses, consultants' fees, and attorneys' fees sustained by reason of having executed the Bonds including, without limitation, all payments The Guarantee has made to investigate and defend the Bond Claims and all consultants' fees and attorneys' fees The Guarantee incurs as a result of issuing the Bonds.

43. To date, The Guarantee has incurred the Indemnity Damages as a result of issuing the Bonds.

44. The Guarantee's Indemnity Damages are continuing in nature because it expects to incur additional losses as a result of issuing the Bonds, which losses will include payment of additional Bond Claims and the costs to investigate and defend itself against those Bond Claims.

45. The Guarantee is entitled to receive its reasonably incurred attorneys' fees pursuant to applicable Florida law.

WHEREFORE, The Guarantee requests that this Court enter judgment against Florida Safety for the Indemnity Damages in the amount of $10,336,152.94 (subject to increase as a result of the unresolved Bond Claims pending as of the filing of this Complaint), costs of this action, prejudgment interest, attorneys' fees, and such further relief as this Court deems just and proper.

Case 8:21-cv-02204 Document 1 Filed 09/16/21 Page 10 of 11 PageID 10

## COUNT III
### (Equitable Subrogation Against Florida Safety)

46. The Guarantee realleges and incorporates paragraphs 1 through 13, 23 through 27, and 29 as though fully set forth herein.

47. The Guarantee has been forced to pay, or defend against, the Bond Claims as a result of Florida Safety's inability, failure, and/or refusal to do so.

48. Florida Safety was primarily liable to the Bond Claimants under the terms of their contracts and the Bonds.

49. The Guarantee's liability to the Bond Claimants was merely technical, secondary, and vicarious to that of Florida Safety, which was actively and completely at fault for the underlying liability to the Bond Claimants.

50. Florida Safety, as principal on the various Bonds, was required to pay the Bond Claimants' claims.

51. The Guarantee, having paid to settle the various Bond Claimants' claims, is equitably subrogated to the Bond Claimants' rights against Florida Safety and/or any contract amounts remaining in the hands of the obligees on the performance bonds The Guarantee issued at the Indemnitors' request.

52. The Guarantee's payments to the Bond Claimants, and any future payments to Bond Claimants, are a result of its obligations under the Bonds and to protect its own interests, not as a volunteer.

53. The Guarantee satisfied the entire amount due and owing to each claimant relating to the respective Bond that The Guarantee issued.

54. Neither Florida Safety nor any other third-parties' rights will be harmed by The Guarantee's subrogation to the Bond Claimants' rights.

55. The Guarantee's damages include, but are not limited to, all sums The Guarantee has paid to settle the Bond Claimants' Bond Claims and The Guarantee's costs and fees incurred to pursue this action.

WHEREFORE, The Guarantee demands judgment against Florida Safety for damages in the amount of $10,336,152.94 (subject to increase as a result of the unresolved Bond Claims pending as of the filing of this Complaint), costs of this action, prejudgment interest, attorneys' fees, and such further relief as this Court deems just and proper.

Dated: September 16, 2021

*/s/ Alberta L. Adams*
BRETT D. DIVERS, ESQ.
Florida Bar No. 973246
bdivers@mpdlegal.com
ALBERTA L. ADAMS, ESQ.
Florida Bar No. 80063
aadams@mpdlegal.com
ANNA ALSTON MERRITT, ESQ.
Florida Bar No. 1010102
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502

*Counsel for Plaintiff, The Guarantee Company of North America USA*